IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAMON S. LLOYD,

        Plaintiff

v.

DEANNA PETTIT, et al.,

        Defendants.

Civil Action 2:20-cv-1074
Judge James L. Graham
Magistrate Judge Kimberly A. Jolson

**ORDER AND REPORT AND RECOMMENDATION**

This matter is before the Court on cross-motions for summary judgment. For the following reasons, the Court **RECOMMENDS** Defendant's Motion for Summary Judgment be **GRANTED** (Doc. 48) and Plaintiff's Motion for Summary Judgment be **DENIED** (Doc. 50). Plaintiff's Renewed Motion to Appoint Counsel (Doc. 50), also before the Court, is **DENIED**.

**I.    BACKGROUND**

Plaintiff Damon Lloyd, a *pro se* prisoner currently incarcerated at Chillicothe Correctional Institute ("CCI"), has brought claims against CCI Unit Manager Deanna Pettit for retaliation, as well as CCI Institutional Inspector Corby Free, CCI Warden Timothy Shoop, CCI Deputy Warden Rebecca Casto, Ohio Department of Rehabilitation and Correction (ODRC) Chief Inspector Antonio Lee, ODRC Attorney Christopher Lambert, and ODRC Director Annette Chambers Smith for their handling of the prison grievance process and denial of his grievance against Defendant Pettit. (Doc. 21 at 2–3). The Court dismissed Plaintiff's claims against Defendants Free, Shoop, Casto, Lee, Lambert, and Chambers Smith for failure to state a claim upon which relief could be

granted, *see* 28 U.S.C. § 1915A(a)–(b)(1), leaving only the retaliation claim against Defendant Pettit to proceed. (Doc. 9 at 1; Doc. 12 at 5).

Plaintiff alleges that on September 5, 2019, Defendant Pettit—in retaliation for a slur directed at her by an unidentified inmate and her failure to obtain a promotion—filed unsanctioned conduct reports against Plaintiff and seventy other inmates in the F-1 dorm for the presence of "contraband" shelves and hooks that had been installed years earlier. (Doc. 21 at 2). The September 5 conduct report completed by Defendant charged Plaintiff with violations of Rules 45 (dealing, conducting, or participating in a transaction for which payment is made, promised, or expected), 49 (destruction, alteration, or misuse of property), and 51 (possession of contraband) of the Inmate Rules of Conduct detailed in Ohio Administrative Code 5120-9-06. (Doc. 48-1 at 2, 4). The conduct report stated:

> During bed checks today it was noticed bed 341 had a contraband shelf attached to the wall. This shelf was not approved to be placed on the wall. When asked where the shelves came from several inmates admitted they were purchase [sic] from a maintenance inmate (dealing). Inmates have been advised to not hang any items not approved from walls, or conduit. They have been given a direct order not to place screws or bolts in the wall which also damages the walls (destruction of state property). This cell also contained newly placed screws in the wall which could also be used as a weapon if removed.

(*Id*. at 4).

Plaintiff argued before the hearing officer adjudicating the charges that the shelf and coat rack were already there when he moved into the cell, and that maintenance would be required to move them. (*Id*. at 7). The September 10 hearing officer's report found that there was a shelf and coat rack attached to the wall of the cell and concluded that Plaintiff had violated Rule 51 (possession of contraband) but acquitted him of violating Rules 45 (participating in a transaction) and 49 (destruction of property). (*Id*.). Plaintiff received thirty days of television restriction for

2

the infraction, and the disposition was affirmed by the Chairman of the Rules Infraction Board. (*Id*. at 8).

In response to the September 5 conduct report, Plaintiff filed an informal complaint with Warden Shoop regarding Defendant's alleged inappropriate supervision on September 8. (Doc. 21 at 2; Doc. 48-2 at 3–8). Defendant denied the complaint on September 11 and provided the following response: "The camera was viewed on 9/6/2019 starting at 10:45am. Several shelves can be seen being removed from your cell. No policies or procedures have been broken. You are not able to appeal a Hearing Officer Conduct report." (Doc. 48-2 at 8). On September 12, Plaintiff escalated the informal complaint to a grievance. (*Id*.) Inspector Free denied the grievance on September 16. (*Id*. at 8–9). Referring to Ohio Administrative Code 5120-9-31 (barring the use of the grievance procedure as an alternate appeal process for hearing officer or rules infraction board decisions) and 5120-09-04 (defining inappropriate supervision as, in part, any continuous method of needlessly harassing inmates), Inspector Free concluded:

> You were issued a conduct report on 9/5/19 by UM Pettit for violation of rules 45, 49, and 51. You were found guilty of these rules violation [sic] by hearing officer on 9/10/19. This Office cannot reverse hearing officer decision in accordance with AR 5120-09-31.
>
> After a review of your RIB record, I have found this is the first conduct report you have received since 4/18 and the first conduct report from UM Pettit. I have reviewed and I do not believe this incident rises to the level to be considered for inappropriate supervision.
>
> Your grievance has been denied. This office will take no further action concerning this matter.

(*Id*.). Plaintiff appealed the denial on September 17, and the denial was affirmed by Chief Inspector Lee on October 2. (*Id*. at 9).

While Plaintiff's September 8 informal complaint was moving through the grievance process, Plaintiff filed two additional complaints. On September 9, he requested that copies of his

3

informal complaints and the Warden's response be printed. (*Id*. at 10). Inspector Free immediately responded and told Plaintiff to kite the inspector for copies of answered grievances. (*Id*.). Plaintiff escalated the request for copies to a grievance, received the same answer, and escalated to appeal; Chief Inspector Lee ultimately affirmed the decision below. (*Id*.). Then on September 12, Plaintiff filed a third complaint reiterating in more detail the allegation of inappropriate supervision against Defendant contained in his original September 8 complaint and adding allegations of an inappropriate relationship and discrimination based on the fact that Defendant's clerk, Inmate Varner, purportedly also had a wooden shelf removed from his cell but did not receive a conduct report as the other seventy-one inmates in the F-1 dorm had for the same infraction. (*Id*. at 12–15).

According to the Complaint, matters escalated on September 26, 2019. First, Inspector Free confirmed to Plaintiff that he had redirected Plaintiff's original informal complaint to Defendant Pettit, telling him to "write it up and see how far it goes." (Doc. 21 at 3). Plaintiff proceeded to file a grievance against Inspector Free with Chief Inspector Lee on September 30, which was denied by Attorney Lambert. (*Id*.; Doc. 48-2 at 17). Second, Defendant Pettit "threatened [Plaintiff] over [his] communications with [his] 75 year old [sic] mother and [his] daughter who were trying to create a website concerning [his] wrongful incarceration," and an officer conducted a shakedown of his cell. (Doc. 21 at 3).

Plaintiff filed his Complaint with this Court on February 27, 2020, claiming violations of his rights under the First, Fifth, Eighth, Thirteenth, and Fourteenth Amendments, and requesting declaratory and injunctive relief. (Doc. 1-1 at 4; Doc. 21 at 4). Specifically, he requests that the Court "declare the respective rights and duties of the defendant(s) in this matter and, in particular, that . . . the civil rights guaranteed by the 1st, 5th, 8th, 13th, and 14th amendments of the

4

Constitution [are] enforceable and conflict[] with the prejudicial and arbitrary actions of the defendant(s)." (Doc. 21 at 4). He also requests "the removal of any/all Defendants whose deliberate indifference are contrary to the Constitution and legitimate penal interests and any other relief to which Plaintiff is justly entitled." (*Id.*).

Defendant filed a motion for summary judgment on September 13, 2021 (Doc. 48), to which Plaintiff responded in opposition and filed a cross-motion for summary judgment (Doc. 50). The matters are fully briefed (Docs. 51, 54), and now ripe for resolution.

## II. STANDARD OF REVIEW

Summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriately entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a defendant shows there is insufficient evidence to support any element of the plaintiff's claim and moves for summary judgment, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on which a reasonable jury could return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Evidence is viewed in the light most favorable to the nonmoving party, meaning that "any direct evidence offered by the [nonmovant] in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004), *citing Liberty Lobby*, 477 U.S. at 251–52, and *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). Ultimately, the Court asks "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

## III. DISCUSSION

Defendant and Plaintiff filed cross motions for summary judgment. (Docs. 48, 50). The Court addresses each in turn.

### A. Defendant's Motion for Summary Judgment

Defendant argues that the Court should grant summary judgment in her favor because Plaintiff has failed to present sufficient evidence to establish any of the three elements of a retaliation claim. (Doc. 48 at 2). Construing Plaintiff's complaint liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), he has alleged two claims of retaliation. First, he claims that Defendant issued him conduct reports for the presence of shelves and hooks in his cell in retaliation for the use of a slur against her and the loss of a promotion. (Doc. 21 at 2). Second, he appears to argue that Defendant had a shakedown conducted of his cell either to prevent him from communicating with his family or in response to his use of the grievance system. (*Id*. at 3).

Retaliation against a prisoner for exercising his constitutional rights violates the Constitution. *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005), *citing Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). A retaliation claim has three elements: (1) the plaintiff engaged in protected conduct; (2) adverse action was taken against the plaintiff; and (3) the adverse action was at least partially motivated by the plaintiff's protected conduct. *Thaddeus-X*, 175 F.3d at 394.

#### 1. Conduct Report

Plaintiff alleges that Defendant wrongly issued conduct reports to him and seventy other inmates in the F-1 dorm at CCI in retaliation for her failure to earn promotion and the use of a slur against her. (Doc. 21 at 2). Defendant contends that Plaintiff was not engaged in protected conduct, that the cell search and conduct reports are not adverse actions, and that Plaintiff was either not injured or incurred only de minimis injury. (Doc. 48 at 6, 9–10, 14). While the conduct report and resulting loss of privileges are sufficient to constitute an adverse action, *see Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018), Plaintiff's retaliation claim ultimately fails because he has not offered any evidence that he was engaged in protected conduct or that his protected conduct was the reason Defendant issued him a conduct report.

First, Plaintiff has provided sufficient evidence that Defendant took adverse action against him. "[A]n adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999), *quoting Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). "Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercise his or her rights is a question of fact." *Maben*, 887 F.3d at 266, *quoting Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). While a plaintiff does not need to show that the retaliation actually deterred anyone from acting, *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005), "some adverse actions are so de minimis that they do not rise to the level of a constitutionally cognizable claim," *Maben*, 887 F.3d at 266, *citing Thaddeus-X*, 175 F.3d at 396.

Defendant argues that the cell search and conduct reports are not adverse actions as required for a constitutional claim of retaliation and that Plaintiff was either not injured by the confiscation of shelving and hooks or loss of television privileges, or that the injuries were de minimis. (Doc. 48 at 9–10, 14). Contrary to Defendant's argument, courts have routinely found

7

that minor conduct reports, which carry the potential for a loss of privileges, can indeed be adverse action at the summary judgment stage. *See, e.g.*, Maben, 887 F.3d at 266–67 (holding that minor misconduct ticket and 7-day loss of privileges was an adverse action); *Tucker v. Wener*, No. 19-1395, 2020 WL 6162637, at *2 (W.D. Mich. July 20, 2020) ("Here, Tucker's receipt of a misconduct report, subsequent guilty finding, and loss-of-privileges sanction are sufficiently adverse for retaliation purposes."). *But see Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (finding the loss of fourteen days of privileges was not adverse action).

In *Maben v. Thelen*, the Sixth Circuit found that a minor misconduct ticket, ultimately resulting in a loss of privileges for seven days, was not sufficiently de minimis for resolution at the summary judgment stage. 887 F.3d at 266–67 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse," *quoting Hill v. Lapin*, 630 F.3d 468, 474 (6th Cir. 2010) (internal quotation marks omitted)). Noting that "the deprivation of privileges is hardly 'inconsequential'" because "they are all that prisoners really have," the court concluded that the matter should proceed to "the factfinder to decide whether the deprivation of those privileges 'poses a sufficient deterrent threat to be actionable.'" *Id*. at 267, *quoting Bell*, 308 F.3d at 603. The conduct report consisting of three rule violations that Plaintiff received here, and the concomitant loss of privileges for thirty days, fall well within the boundaries for a qualifying adverse action as defined by *Thaddeus-X* and *Mabel*.

As to the remaining two elements of a retaliation claim, Plaintiff has not alleged any facts to establish that a genuine dispute of material fact exists as to whether he was engaged in constitutionally protected conduct and whether that protected conduct motivated the adverse action taken against him. "Absent protected conduct, plaintiffs cannot establish a constitutional violation." *Thaddeus-X*, 175 F.3d at 395. Plaintiff asserts that Defendant issued him a conduct

8

report because she was angry after a slur had been used against her and she had lost a promotion, but neither of these alleged incidents involve *any* conduct by Plaintiff, let alone conduct that is protected by the Constitution. Both parties agree that Plaintiff was not the person who yelled a slur at Defendant. (*See* Doc. 21 at 2; Doc. 48-1 at 2). Plaintiff merely refers to an "anonymous slur." (Doc. 21 at 2).

Likewise, there is no evidence to suggest that Plaintiff had any responsibility for or influence over Defendant's promotion prospects. Defendant argues that it is "inherent and obvious" that Plaintiff had no connection to any job promotion (Doc. 48 at 7) and denies that she was either seeking or being considered for a promotion at the time (Doc. 48-1 at 2). Plaintiff does not argue that there was any connection between his own actions and Defendant's alleged loss of promotion, nor does he offer any evidence that could allow the inference that a connection existed. (*See* Doc. 21). Because Plaintiff has not shown that he was engaged in protected conduct, neither can he show that Defendant was motivated by his protected conduct when she issued the conduct reports on September 5.

Plaintiff argues that there are genuine disputes as to material facts, pointing to what he contends are falsehoods in Defendant's account. (Doc. 50 at 2–5). Specifically, he objects to statements that describe Defendant and her staff going through the F-1 dorm cell by cell to find and remove any contraband shelving and hooks and to the assertion that Defendant initiated a project to repaint the walls in the dorm after the removal of the shelves and hooks. (*Id.* (citing Doc. 48 at 3)). Plaintiff asserts that he personally observed maintenance crews spending hours using drills, saws, and grinders to remove old shelves in the past, and questions how Defendant and her staff were able to effectuate removal of the shelves and hooks without the aid of either maintenance crew or tools. (*Id.* at 2). He disputes Defendant's claim to repainting the walls, citing

9

the fact that the F-1 dorm had already been completely repainted, including his cell, under Unit Manager Kyle Hauswirth. (*Id.*). Plaintiff also provides evidence that inmates had previously been instructed in 2016 to leave in place any items secured to the wall with fasteners until maintenance staff could come and remove the items. (Doc. 50-4).

Plaintiff's arguments and evidence provide support solely for his claim that the conduct report Defendant issued him for contraband shelves and hooks was wrongful. But the wrongfulness of Defendant's actions is not the material issue here. *See Maben*, 887 F.3d at 262 (holding that factual support for a prisoner's misconduct citation does not foreclose a retaliation claim based on that citation); *Taylor v. Lantagne*, 418 F. App'x. 408, 413 (6th Cir. 2011) ("A court could properly find that the order was unconstitutional retaliation against the prisoner, while still finding that the prisoner was rightfully convicted of a disciplinary infraction and properly denied good time credits…."); *Parker v. Reddin*, No. 20-1106, 2020 WL 8415084, at *5 (W.D. Mich. Aug. 5, 2020) ("The fact that [the defendant] found contraband during the shakedown does not necessarily foreclose Parker's retaliation claim."). That is, even if Plaintiff's allegations as to the wrongfulness of Defendant's actions are all true, he has not established a claim of *constitutional* retaliation because he has not shown that Defendant's actions were motivated by his exercise of a constitutional right.

Section 1983 provides a remedy for constitutional violations committed by a state actor. 42 U.S.C. § 1983. But not all wrongs committed by an officer of the state are violations of the Constitution. The wrongful actions of state actors only become a constitutional violation when "motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Thaddeus-X*, 175 F.3d at 386. Because Plaintiff has not offered any evidence from which the Court may infer that he was exercising a constitutional right and that Defendant issued him a

10

conduct report to punish him for that exercise, he has failed to show that there is a genuine dispute of material fact regarding either the first or third elements of his retaliation claim. Defendant is thus entitled to judgment as a matter of law with respect to Plaintiff's claim of retaliation based on the September 5, 2019 conduct report.

### 2. Threats and Cell Shakedown

Plaintiff also alleges that Defendant threatened his communications with his family and shook down his cell in retaliation for filing a grievance against her objecting to the September 5, 2019 conduct reports she issued for contraband shelves and hooks. (Doc. 21 at 3). Ultimately, Plaintiff has not offered sufficient evidence to demonstrate that a genuine dispute of material fact exists as to whether Defendant took adverse action against him and whether that action was motivated by his protected conduct.

First, Plaintiff has satisfied the first element of a First Amendment retaliation claim that he was engaged in protected conduct. "Filing a non-frivolous grievance against prison personnel is protected conduct under the First Amendment." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010), *citing Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."(quoting *Herron*, 203 F.3d at 415) (internal quotation marks omitted); *see also Stephenson v. Black*, 887 F.2d 1088 Table (6th Cir. 1989) ("Although [plaintiff] has no protected interest in placement in a particular institution, he does have a protected right to complain about the conditions of the jail."). Frivolous—and thus unprotected—grievances include the abusive or manipulative use of the grievance system. *Maben*, 887 F.3d at 264 (quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).

11

There is no evidence that Plaintiff's grievance was either abusive or manipulative. Plaintiff objected to the conduct reports he and seventy other inmates received for possession of shelves and hooks in their cells, and he presented evidence that the conduct reports were wrongful based on the fact that the shelves and hooks had been installed long before the current inmates inhabited the F-1 dorm and inmates had previously been instructed not to attempt removing them. Nor does the denial of the grievance indicate that it was frivolous. *See Riddle v. Egensperger*, 266 F.3d 542, 551 (6th Cir. 2001) (holding that a finding that "the claims are without merit, does not necessarily support the conclusion that the plaintiff's claims were frivolous, unreasonable, or groundless"). By complaining about the putatively wrongful conduct report he had received, Plaintiff was pursuing a genuine grievance about the supervision and disciplinary process in the prison and seeking redress for that grievance. *See Maben*, 887 F.3d at 264. Accordingly, he was engaged in protected conduct, satisfying the first element of his retaliation claim.

Plaintiff has failed, however, to satisfy the second or third elements of a retaliation claim. First, Plaintiff alleges that Defendant threatened his communication with his mother and daughter, but he does not elaborate as to exactly what was said or the nature of the consequences threatened. (*See* Doc. 21 at 3). Generally, courts have found that such "vague threats of unspecified harm do not constitute adverse actions." *Harris v. Sowers*, No. 2:16-CV-888, 2020 WL 6823117, at *3 (S.D. Ohio Nov. 20, 2020), *quoting Snelling v. Gregory*, No. 1:17-cv-P41, 2017 WL 2602591, at *3 (W.D. Ky. June 14, 2017); *see also Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by [the defendant] that she would make [the plaintiff's] life 'hell' is simply too vague to pass this threshold."). Without more, the Court cannot conclude that the alleged threats amounted to adverse action.

Whether the shakedown of Plaintiff's cell is an adverse action is a closer question. While retaliatory cell searches have previously been deemed adverse action, *see Bell v. Johnson*, 308 F.3d 594, 604–05 (6th Cir. 2002), the cases in which courts have treated a shakedown as an adverse action typically involved an injury greater than simply the search itself, *see, e.g.*, *id*. (emphasizing that "defendants twice left the plaintiff's cell in disarray, confiscated his legal papers without returning them, and stole the medical diet snacks that had been provided to him to alleviate his weight loss from AIDS"); *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001) (cell search and confiscation of legal papers satisfies the adverse action prong); *Parker*, 2020 WL 8415084, at *5 (shakedown in which cube was left in disarray and legal paperwork destroyed was adverse action). In *Bell*, the Sixth Circuit's reasoning focused almost exclusively on the theft of the plaintiff's legal documents and medical snacks during the shakedowns, not the fact of the searches themselves, in finding that the defendant's actions were sufficiently adverse. 308 F.3d at 604–05 (compiling cases from other circuits holding that confiscation of a prisoner's property was sufficient injury to support a retaliation claim, and reasoning that "we see no basis for concluding that prisoners should be required to tolerate the theft of their property, including legal documents and medical dietary supplements, as the price of petitioning the courts"). Here, Plaintiff has not alleged that anything was taken from his cell or any damage inflicted. The search of his cell, without some other associated injury, does not constitute an adverse action such "that [it] would 'deter a person of ordinary firmness' from the exercise of the right at stake." *See Thaddeux-X*, 175. F.3d at 396.

Even if the threats and shakedown were adverse actions, Plaintiff has not presented any evidence—other than temporal proximity—that the alleged threats and shakedown were causally connected to his use of the grievance process. "'[T]emporal proximity [between protected conduct and adverse action] alone may be significant enough to constitute indirect evidence of a causal

13

connection so as to create an inference of retaliatory motive' sometimes and in some settings." *Tucker*, 2020 WL 6162637, at *3, *quoting Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (internal quotation marks omitted); *cf. Reynolds-Bey v. Harris*, 428 Fed.Appx. 493, 505 (6th Cir. 2011), (holding that a plaintiff may rely on circumstantial evidence to demonstrate causation, *citing Goad v. Mitchell*, 297 F.3d 497, 505 (6th Cir. 2002)). But "when other evidence of retaliatory motive is lacking, [this court has] been reluctant to hold that temporal proximity is sufficient to establish causation." *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (per curiam); *see also Skinner v. Bolden*, 89 F. App'x 579, 579–80 (6th Cir. 2004) (holding that, without supporting evidence, "conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive"); *Smith v. Campbell*, 250 F.3d 1032, 1038–39 (6th Cir. 2001) (finding that temporal proximity between protected conduct and adverse action was insufficient to establish a causal connection).

Plaintiff has had the opportunity to discover a connection between the filing of his grievance and any perceived adverse action taken against him. Yet, the sole evidence of retaliatory motive here is the fact that the shakedown and alleged threats happened while Plaintiff was pursuing a grievance against Defendant. What is more, Plaintiff has not provided sufficient evidence to support the inference that Defendant was motivated by Plaintiff's use of the grievance process.

Significantly, Plaintiff identifies that an unnamed "DRC officer" performed the alleged retaliatory shakedown of his cell. (Doc. 21 at 3). He makes no allegation that the officer who performed the shakedown did so at the direction of the Defendant. (*See id.*). In fact, Defendant attested by declaration that she "did not order or instruct to have any 'shake-down' or cell search of [Plaintiff]'s cell on September 26, 2019." (Doc. 48-1 at 3). And Plaintiff has not rebutted that

testimony with his own evidence. Simply put, the actions of this officer, without supporting evidence demonstrating that he acted under the direction of Defendant, are too attenuated to be attributed to Defendant—let alone to be attributed to Defendant's alleged retaliatory motive.

Similarly, Plaintiff offers no evidentiary support regarding Defendant's alleged threats beyond the simple allegation of such in his Complaint. (Doc. 21 at 3). Plaintiff submits that his bare allegations of adverse action, claimed to have occurred after he filed grievances, are sufficient to create a genuine dispute about retaliatory motive for a jury. Yet, without further supporting evidence, "conclusory allegations of temporal proximity are not sufficient to show retaliatory motive." *Skinner*, 89 F. App'x at 579–80. In other words, there is insufficient evidence in the record for a reasonable jury to find in Plaintiff's favor regarding the motivation element of his retaliation claim.

Therefore, viewing all the evidence in the best light for Plaintiff, Plaintiff has not shown the existence of a genuine dispute as to any material fact with respect to the second or third elements of his retaliation claim for the threats and cell shakedown.

Because Plaintiff has failed to show that there is a genuine issue of material fact regarding either of his two retaliation claims, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 48) be **GRANTED**.

    **B.**    **Plaintiff's Motion for Summary Judgment**

Plaintiff's arguments in support of his Motion for Summary Judgment (Doc. 50) are not entirely clear. Nonetheless, Plaintiff has not offered evidence to satisfy each of the elements of his retaliation claims or shown that, viewing all facts and evidence in favor of Defendant, a

reasonable jury could not return a verdict for Defendant. Thus, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. 50) be **DENIED**.

## IV. MOTION TO APPOINT COUNSEL

In his Motion in Opposition to Defendant's Motion for Summary Judgment and Motion for Summary Judgment, Plaintiff also renewed his Motion to Appoint Counsel. (Doc. 50 at 9). The Court previously denied without prejudice Plaintiff's original Motion to Appoint Counsel (Doc. 8) because this action had not yet progressed to the point that the Court was able to evaluate the merits of Plaintiff's claim. (Doc. 9 at 3). Because the Court now finds that Plaintiff has failed to demonstrate the existence of a genuine dispute as to any material fact, Plaintiff's Renewed Motion (Doc. 50 at 9) is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED** (Doc. 48) and Plaintiff's Motion for Summary Judgment be **DENIED** (Doc. 50). Plaintiff's Renewed Motion to Appoint Counsel (Doc. 50 at 9) is **DENIED**.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in

part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

    IT IS SO ORDERED.

Date: February 1, 2022                              /s/ Kimberly A. Jolson
                                                      KIMBERLY A. JOLSON
                                                      UNITED STATES MAGISTRATE JUDGE